**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **CORTLAND A. SHIELDS, Jr.,** | * |
| *Plaintiff,* | * |
| v. | *    **Civil Case No. 1:23-cv-02932-JMC** |
| **VERIZON MARYLAND, LLC,** | |
| | * |
| *Defendant.* | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff, Cortland Shields, Jr., filed this employment discrimination lawsuit against Defendant, Verizon Maryland, LLC, on October 27, 2023. (ECF No. 1). Plaintiff then filed an Amended Complaint on January 10, 2024, asserting three causes of action: unlawful sexual harassment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII") (Count I); unlawful retaliation in violation of Title VII (Count II); and violations of the Maryland Fair Employment Practices Act, Md. Code § 20-601 *et seq.* ("MFEPA") (Count III). (ECF No. 18). Presently before the Court are three motions: (1) Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 18); Defendant's Motion to Strike Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 20); and Plaintiff's Motion for Leave to File Plaintiff's Opposition to Defendant's Motion to Dismiss Six (6) Days Out of Time (ECF No. 21). The Court has additionally considered the parties' oppositions and replies regarding all three motions. (ECF Nos. 19, 22, 23). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendant's motion to strike will be denied, Plaintiff's motion for leave will be granted, and Defendant's motion to dismiss will be granted.

## I.  FACTUAL BACKGROUND

Plaintiff is an African American male who began his employment with Defendant in or around September 2017 as a "Service and Installation Technician."  (ECF No. 16 at 3–4.)[1]  Plaintiff was suspended without pay in January 2021 "on false reports from Mr. [Charles] Stringfellow," who was one of Plaintiff's supervisors that "frequently went out of his way to interact with Plaintiff."  *Id.* at 4.  Mr. Stringfellow then hauled Plaintiff into his office upon Plaintiff's return to work on February 1, 2021, alleging that Plaintiff was stealing time from the company.  *Id.*  The allegations were ultimately proven to be unfounded, though, and Plaintiff was rehired as a service technician on March 1, 2021.  *Id.*  Plaintiff was not permitted to relocate upon his return although he alleges that other rehired employees were previously afforded that opportunity.  *Id.* at 4–5.

Plaintiff was then "subjected to undue scrutiny, attention, and negative performance evaluations by Mr. Stringfellow."  *Id.* at 5.  For instance, Mr. Stringfellow failed Plaintiff on a field inspection when visiting Plaintiff's job site on February 15, 2022, although Mr. Stringfellow subsequently "passed Plaintiff after Plaintiff informed him that he had been improperly scored." *Id.*  Mr. Stringfellow then reported Plaintiff on March 22, 2022, for arriving three (3) minutes late to work despite Mr. Stringfellow failing to report any other tardy technicians.  *Id.*  On April 4, 2022, Mr. Stringfellow again visited Plaintiff's job site and "deliberately misreported" that Plaintiff failed to properly use safety cones while at a customer's house.  *Id.*

Plaintiff contacted HR at approximately 3:00pm that same afternoon and "made a formal complaint against Mr. Stringfellow for sexual harassment and hostile work environment, reporting to Jacqueline Ado, who did not take Plaintiff's allegations seriously."  *Id.* at 6.  When Plaintiff

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.  At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff."  *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

asked Mr. Stringfellow "why he kept forcing interactions with [Plaintiff] and scrutinizing [Plaintiff] so closely," Mr. Stringfellow told Plaintiff to "get the fuck out of the building" after threatening Plaintiff. *Id.* Defendant terminated Plaintiff's employment the following day on April 5, 2022, before Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") on April 6, 2022, and filed a formal charge of discrimination with the EEOC on October 28, 2022. (ECF No. 16 at 6; ECF No. 18-2 at 2; ECF No. 19-1 at 3 n.1).

## II.   STANDARD OF REVIEW

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546). Moreover, "In employment

discrimination cases" such as this one, "courts often take judicial notice of EEOC charges and EEOC decisions" without converting a motion to dismiss into one for summary judgment. *Yampierre v. Balt. Police Dep't*, No. ELH-21-12-9, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (citing *Campbell v. Mayorkas*, No. 3:20-cv-697-MOC-DSC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)); *Bowie v. Univ. of Md. Med. Sys.*, No. CIV.A. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint.").

## III.  DISCUSSION

### A.  The Court Will not Strike Plaintiff's Untimely Opposition to Defendant's Motion to Dismiss and Will Grant Plaintiff's Motion for Leave

Before turning to the merits of Defendant's motion to dismiss, Defendant urges the Court not to consider Plaintiff's opposition to Defendant's motion to dismiss because Plaintiff's opposition was filed six (6) days late according to the Local Rules.  (ECF No. 20).   Local Rule 105.2(a) provides that "Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion."  Loc. R. 105.2(a) (D. Md. 2023).  Defendant electronically served Plaintiff with its motion to dismiss on January 10, 2024, making Plaintiff's opposition thereto due by January 24, 2024.  (ECF No. 18 at 4); *see also* Fed. R. Civ. P. 6(a)(1)(A)–(C) (requiring that, when applying any time period pursuant to a local rule or court order, courts shall exclude the day of the event that triggers the period).  However, Plaintiff filed his opposition on January 30, 2024.  (ECF No. 19).  Plaintiff submits that his untimeliness was the result of an internal calendar deadline error which went unbeknownst to Plaintiff until Defendant filed its motion to strike rather than the result of "deliberate or neglectful disregard for court deadlines."  (ECF No. 21 at 1–2).

It is within the Court's discretion to consider an untimely pleading for failing to abide by the Local Rules' briefing schedule. *See Ball-Rice v. Bd. of Educ. of Prince George's Cnty.*, No. CIV.A. PJM-11-1398, 2013 WL 2299725, at *5 (D. Md. May 24, 2013) ("Since Local Rule 105.2 does not provide the consequence for a failure to meet the prescribed deadline, it is within the discretion of the court to consider a late submission untimely and strike it from the record."); *Parker v. Goldman Sachs Mortg. Co. Ltd. P'ship*, 596 F. Supp. 3d 559, 568 n.5 (D. Md. 2022) (noting same). Given that Plaintiff's opposition was filed within six (6) days of its deadline, Plaintiff's explanation for same, and the Fourth Circuit's emphasis on deciding cases on their merits rather than technicalities, the Court will exercise that discretion by denying Defendant's motion to strike. *See Trustees of Sheet Metal Workers' Loc. Union No. 5 & Iron Workers Emps. Ass'n, Emp. Pension Tr. v. R. Stoddard, LLC*, No. GJH-17-3286, 2019 WL 1128518, at *1 (D. Md. Mar. 8, 2019) ("The Fourth Circuit 'has a strong policy that cases be decided on their merits.'") (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)); *Sama v. Turning Point, Inc.*, No. 1:22-CV-02344-JMC, 2024 WL 112030, at *3 (D. Md. Jan. 10, 2024) (accepting pleading filed untimely by three days); *Evans v. Resurgent Cap. Servs.*, No. 1:23-CV-02054-JMC, 2023 WL 6621348, at *1 (D. Md. Oct. 11, 2023) (accepting pleading filed untimely by two days).

Regarding Plaintiff's motion, Federal Rule of Civil Procedure 6(b)(1)(B) provides that the Court may retroactively extend the deadline by which a party was required to file a motion if that party failed to meet that deadline "because of excusable neglect." "The Supreme Court has defined 'neglect' as encompassing 'late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Arevalo v. Koski*, No. CIV. WDQ-13-3735, 2014 WL 2085352, at *2 (D. Md. May 15, 2014) (quoting *Pioneer Inv. Servs. v.*

*Brunswich Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993)).  "The Supreme Court has defined 'excusable' as 'at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission.'"  *Id.* (quoting *Pioneer*, 507 U.S. at 395).  "The relevant circumstances include the danger of prejudice to the [nonmovant], the length of the delay[2] and its potential impact on judicial proceedings, the reason for the delay . . . and whether the movant acted in good faith."  *Id.* (internal quotation omitted).  "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."  *Pioneer*, 507 U.S. at 392.

Defendant cites cases from this Court and others where attorneys miscalculating court deadlines or committing clerical errors did not constitute excusable neglect.  But there are also ample cases in which this Court and others have found that such conduct may constitute excusable neglect, particularly where there is little to no prejudice to the nonmoving party or impact on the case.  *See, e.g.*, *Escalante v. Tobar Constr., Inc.*, No. 8:18-CV-00980-PX, 2019 WL 109369, at *5 (D. Md. Jan. 3, 2019); *Adejola v. Barr*, 439 F. Supp. 3d 120, 125 (W.D.N.Y. 2020) ("Although a calendaring error by a party's attorney is rarely a basis for excusable neglect, it may suffice where, as here, the delay was minimal and there was no prejudice to the opposing party.") (internal quotation omitted); *Conrad v. U.S. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 785–86 (S.D. Ohio 2019) (granting motion for leave despite inadvertent calendar error after analyzing the *Pioneer* factors); *Gragg v. Roth*, No. CIV-19-1007-SLP, 2021 WL 5992287, at *2 (W.D. Okla. Feb. 12,

---

[2] The Court therefore rejects Defendant's sub-argument that "the fact that Plaintiff filed his Opposition only six days after the deadline is irrelevant."  (ECF No. 20-1 at 4).  Interestingly, Defendant cites the *Pioneer* factors—including the length of delay—in its opposition to Plaintiff's motion despite its preceding assertion in its motion to strike.  (ECF No. 23 at 2).  The Court also finds that Defendant's argument regarding Plaintiff's Counsel's conduct in *other, unrelated cases* is, at best, outside the parameters of the *Pioneer* factors and, at worst, borderline inappropriate.

2021) (collecting cases).  Here, the *Pioneer* factors warrant granting Plaintiff's motion for leave.

First, Defendant does not argue or indicate in any way that it has, is, or will suffer prejudice

resulting from Plaintiff's untimely filing.  Second, the length of the delay was six days, which is

shorter than the delays in some of the cases cited by Defendant in support of precluding Plaintiff's

opposition (many of which also occurred in different contexts).  Third, there will be no adverse

impact on these proceedings by accepting the late filing, especially given the rulings yet to follow.

While it is true that the reason for the delay here is not particularly compelling, Plaintiff asserts

throughout his motion that the mistake was based on good faith efforts to abide by the Court's

deadlines albeit unsuccessfully.  Accordingly, the Court will grant Plaintiff's motion for leave and

consider Plaintiff's untimely opposition to Defendant's motion to dismiss.  Plaintiff's Counsel is

nevertheless cautioned as to the importance of complying with Court deadlines, as not all

circumstances warrant being as lenient with late filings.

    B.   <u>The Court Will Not Consider the EEOC Email and Charge Log Exhibits Attached to Defendant's Motion to Dismiss</u>

Defendant relies on two extraneous documents in arguing for dismissal of Plaintiff's

Amended Complaint: (1) an email from the EEOC to Natasha Campbell, an EEOC compliance

officer then-employed by Defendant, attached to Defendant's initial motion to dismiss (ECF No.

18-2 at 9); and (2) an EEOC charge log purportedly memorializing updates in Plaintiff's EEOC

charge during the EEOC's investigation attached to Defendant's reply in support of its motion to

dismiss (ECF No. 22-1 at 2–3).  "Under limited circumstances, when resolving a Rule 12(b)(6)

motion, a court may consider exhibits, without converting the motion to dismiss to one for

summary judgment."  *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019).  Those

limited circumstances are matters of public record, documents explicitly incorporated into a

complaint by reference or attached to the complaint as exhibits, or any document "submitted by

the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 501–02. "A document is 'integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022), *and aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022) (internal quotation omitted). The EEOC email and charge activity log are not public records, they were not explicitly incorporated into Plaintiff's Amended Complaint or attached to Plaintiff's Amended Complaint as exhibits, and the existence of these documents does not give rise to any legal rights, *i.e.* they are not integral to Plaintiff's Amended Complaint.

"If the court considers matters outside of the pleadings on a Rule 12(b)(6) motion, it shall treat the motion as one for summary judgment, to be disposed of under Rule 56, and provide all parties a 'reasonable opportunity to present all material made pertinent to such a motion.'" *Nader v. Blair*, No. WDQ-06-2890, 2007 WL 6062652, at *4 (D. Md. Sept. 27, 2007), *aff'd*, 549 F.3d 953 (4th Cir. 2008) (quoting Fed. R. Civ. P. 12(b)); *see also Jacobs v. Walmart Inc.*, No. CV RDB-22-2666, 2023 WL 4532822, at *4 (D. Md. July 13, 2023) (converting motion to dismiss Title VII claim into a motion for summary judgment because the Court considered the EEOC email sent to plaintiff regarding an update in his EEOC charge). "Generally, however, summary judgment is inappropriate 'where the parties have not had an opportunity for reasonable discovery.'" *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) (quoting *E.I. du Pont de Nemours and Co. v. Kolan Indus., Inc.*, 637 F.3d 435, 448–59 (4th Cir. 2011)). It is thus within the Court's discretion to consider materials outside of the pleadings in analyzing a motion to dismiss. *See Kelly v. Simpson*, No. CV RDB-15-3647, 2016 WL 1451304, at *1 (D. Md. Apr. 12,

2016), *aff'd*, 670 F. App'x 803 (4th Cir. 2016) ("Ordinarily, a court is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss. However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).") (internal quotation omitted).

Here, the Court declines to consider the EEOC email and charge log. Regarding the EEOC email, Defendant argues that it is indicative of Plaintiff receiving notice that his right to sue letter was issued on July 26, 2023. But the email is addressed to Natasha Campbell, one of Defendant's then-employees, rather than Plaintiff. Perhaps recognizing this, Defendant also submitted the EEOC charge log, which does indicate that an email was sent to Plaintiff at approximately the same time as the email sent to Ms. Campbell. But the EEOC charge log does not indicate the specific contents of the email sent to Plaintiff. Additionally, Defendant did not present the EEOC charge log until it submitted its reply memoranda. Thus, the document initially submitted in connection with Defendant's motion to dismiss is not indicative of the information *Plaintiff* received on July 26, 2023, and the only documents submitted suggesting such information were not provided by Defendant until Plaintiff had no opportunity to contest its accuracy or authenticity. Accordingly, the Court will decline to consider the EEOC email and EEOC charge log, thereby analyzing Defendant's motion as one to dismiss rather than for summary judgment.

   C.   Plaintiff Failed to Exhaust His Administrative Remedies Regarding Counts I and II of his Amended Complaint

Now turning to Defendant's motion to dismiss, Defendant argues that Plaintiff's Amended Complaint must be dismissed because Plaintiff failed to exhaust administrative remedies. (ECF No. 18-1 at 5). Specifically, Defendant first argues that Plaintiff failed to assert any claims of sex-based harassment or retaliation for complaining about sex-based treatment in his EEOC charge. *Id.* at 5, 8. "To assert a Title VII claim in federal court, a plaintiff must first exhaust his

administrative remedies." *Montgomery v. Crothall Healthcare, Inc.*, No. RDB-2—1154, 2021 WL 75136, at *3 (D. Md. Jan. 8, 2021). "Exhaustion of administrative remedies" under Title VII "is a prerequisite to suit," and "A failure by the plaintiff to exhaust administrate remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Ford v. Soc. Sec. Admin. Acting Comm'r Carolyn Colvin*, No. CV ELH-16-2324, 2016 WL 3541233, at *2 (D. Md. June 29, 2016) (internal quotations and citations omitted). To properly exhaust administrative remedies "In Maryland, a deferral state, a claim of discrimination under Title VII . . . must be filed with the EEOC within 300 days of the alleged discriminatory action." *Trazell v. Del. Elevator, Inc.*, No. CV RDB-20-2265, 2020 WL 5982888, at *1 (D. Md. Oct. 8, 2020), *aff'd*, 837 F. App'x 248 (4th Cir. 2021). The Equal Employment Opportunity Act of 1972 provides the EEOC with four options once a civil charge has been filed by an aggrieved employee:

> First, the EEOC must investigate the charge and either [1] dismiss for a lack of reasonable cause or [2] attempt to resolve the charge through conciliation and other informal dispute resolution techniques. Second, should conciliation fail, the agency may [3] file a civil action on the complainant's behalf, or [4] permit the complainant to file suit on their own behalf once 180 days have elapsed since the charge was filed.

*White v. Univ. of Md. Med. Ctr.*, 642 F. Supp. 3d 504, 509 (D. Md. 2022).

Relevant to Defendant's argument, "a federal court may only consider those allegations included in the EEOC charge." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013); *Brown v. Target Inc.*, No. 14-CV-0950, 2015 WL 6163609, at *3 (D. Md. Oct. 16, 2015) ("Of import here, even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process."). "Although courts recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality, courts are not at liberty to read into administrative charges allegations they do not contain." *Brown*, 2015 WL 6163609 at *3 (internal quotations omitted). However, the

Court may nevertheless consider "any charges that would naturally have arisen from an investigation" into the allegations actually set forth by an aggrieved employee in their EEOC charge. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). The "touchstone for exhaustion" is thus "whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ." *Brown*, 2015 WL 6163609 at *4 (quoting *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012)); *see also Sydnor*, 681 F.3d at 594 ("[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit.").

> Here, Plaintiff set forth the following details supporting his charge of discrimination:

> I began employment with [Defendant] on or about October 2016 my most recent position was Service Technician. On or about March 2022, my local union assisted in reinstating my employment after Local Manager Charles Stringfellow discharged me. Since then Mr. Stringfellow has retaliated against me and has subjected me to a hostile work environment, including sitting in the parking lot on his day off, reporting me late to my supervisor despite the fact that I walked in with other technicians, bullying me, cussing at me, and conducting false inspections. On April 4, 2022, I submitted a complaint to the Ethics Department. On April 5, 2022, I was suspended. On April 24, 2022, I was discharged. [Defendant] did not give me a reasonable explanation for its action. I believe I have been subjected to retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, with respect to harassment and discharge.

(ECF No. 18-2 at 2). The Court cannot conclude that Plaintiff's claim for sexual harassment in Count I of the Amended Complaint is reasonably related to the above EEOC charge. Plaintiff does not allege in any way in the EEOC charge that his purported mistreatment was because of his sex. Plaintiff argues in his opposition to the motion to dismiss that the above allegations "corresponded with the sexual harassment facts alleged in the Amended Complaint" because "Plaintiff in his Charge, describes stalking-like behavior" by alleging that Mr. Stringfellow sat in parking lots

during his off days, as if to harass and bully Plaintiff, along with conducting false inspections and

cursing at Plaintiff.  (ECF No. 19-1 at 5).  But the Amended Complaint—like the EEOC charge—

similarly fails to allege that any misconduct by Mr. Stringfellow was motivated by sex.  *See Burnett

v. Aldi, Inc. Md.*, No. 1:23-CV-00376-JRR, 2024 WL 51129, at *7 (D. Md. Jan. 4, 2024) ("The

Fourth Circuit has found that the plaintiffs failed to exhaust where the complaint alleged a violation

on a forbidden basis (i.e., race or sex) not alleged in any EEOC charge . . . ."); *cf. Bartlette v. Hyatt

Regency*, 208 F. Supp. 3d 311, 325 (D.D.C. 2016) ("These [hostile work environment] allegations

are not actionable here because they go beyond the scope of [plaintiff's] EEOC charge, which is

devoid of any mention of a hostile work environment that included racially charged comments or

race/age based demeaning behavior . . . An EEOC investigation into racial comments and race/age

based demeaning treatment could not have reasonably been expected to develop from the

allegations in [plaintiff's] EEOC charge, which simply contained factual assertions regarding

denial of breaks, false accusations of misconduct, and termination."); *Littlejohn v. City of N.Y.*,

795 F.3d 297, 323–23 (2d Cir. 2015) (finding sexual harassment claim not reasonably related to

EEOC charge in part because plaintiff "did not include any factual allegations whatsoever

describing the alleged sexual harassment . . . even though the harassment allegedly began . . . well

before she completed these forms").  There is not a single allegation in Plaintiff's Amended

Complaint that either the field inspection(s), sitting in the parking lot, reporting Plaintiff for being

late, misreporting Plaintiff's proper use of safety cones, or any other alleged misconduct was

motivated by, resulting from, or impacted by Plaintiff's sex.  Rather, Plaintiff's Amended

Complaint asserts various legal conclusions which are owed no deference.  *See, e.g.*, (ECF No. 16

at 8) ("The actions and conduct . . . as set forth herein created a hostile, offensive and intimidating

work environment based upon Plaintiff's sex and detrimentally affected Plaintiff.  The actions and

conduct . . . as set forth herein were severe and pervasive and constituted discrimination based on sex."). Plaintiff's failure to allege beyond legal conclusions that any mistreatment was motivated by his sex would warrant dismissing Plaintiff's claim *sua sponte* under Rule 12. *See Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 586 (D. Md. 2016) ("A district court may *sua sponte* dismiss a complaint for failure to state a claim, and where the face of a complaint plainly fails to state a claim for relief, the district court has 'no discretion but to dismiss it.'") (quoting *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006)). Nevertheless, the Court finds that Count I of Plaintiff's Amended Complaint unreasonably exceeds the scope of Plaintiff's EEOC charge and therefore Count I is dismissed without prejudice.

Second, Defendant relatedly argues that Plaintiff failed to exhaust his administrative remedies with respect to Count II because the Amended Complaint asserts a claim for retaliation for complaining about sex-based mistreatment that was not raised in Plaintiff's EEOC charge. (ECF No. 18-1 at 5). The Court agrees. Because Plaintiff failed to exhaust his administrative remedies regarding any claims of sexual harassment or sex-based discrimination as explained above, he likewise cannot assert a claim of retaliation for complaining about such conduct because Plaintiff's Amended Complaint is the first instance in which Plaintiff claims that his internal complaint was for sex-based harassment and/or discrimination. In other words, Plaintiff failed to indicate in any way in his EEOC charge that his internal complaint on April 4, 2022, was for sex-based discrimination. Plaintiff therefore cannot assert a cause of action for retaliation based on complaining about sex-based discrimination because such a claim was never properly raised with the EEOC.

Plaintiff argues in his opposition that his retaliation claim should proceed because:

Plaintiff's retaliation allegations in his Charge are similar and reasonably related to the factual allegations raised in the Amended Complaint. Plaintiff explains in his

> Charge the first appearance of retaliation began when he was reinstated to his position in March of 2022 after having been discharged by Mr. Stringfellow. Plaintiff explains the nature of the harassment that caused him to submit a complaint to the union's Ethics Department on April 4, 2022, and that the following day on April 5, 2022, he was terminated.

(ECF No. 19-1 at 5).  Plaintiff's argument undercuts itself in multiple ways.  With regard to the first assertion, the allegations in Plaintiff's EEOC charge are not reasonably related to the allegations in Plaintiff's Amended Complaint, which raises allegations of sexual harassment and sex-based discrimination for the first time.  In fact, Plaintiff provides a citation to a Fourth Circuit case where "plaintiff exhausted administrative remedies when both formal complaint and administrative charge alleged she was retaliated against by management because she complained about supervisor's sexual harassment," which undermines Plaintiff's position because Plaintiff did not indicate at all in his administrative charge that he was retaliated against for complaining about sexual harassment.  *Id.*  Plaintiff's second assertion also suggests that any conduct post-dating Plaintiff's reinstatement in March 2021[3] was in retaliation for Plaintiff seeking union assistance, with no mention whatsoever of Plaintiff being retaliated against for complaining about sexual harassment.  Regardless, Plaintiff's EEOC charge seeks relief only for retaliation that occurred after April 5, 2022, which would not include any alleged retaliation by Mr. Stringfellow pre-dating April 5, 2022, resulting from Plaintiff seeking union assistance with his reinstatement.  (ECF No. 18-2 at 2).  Regarding the third assertion, Plaintiff is correct that his EEOC charge "explains the nature of the harassment" leading to his internal complaint.  However, Plaintiff's explanation has

---

[3] Plaintiff provides inconsistent dates as to when his reinstatement occurred.  Plaintiff's EEOC charge and opposition to the motion to dismiss assert that Plaintiff's reinstatement occurred in March 2022.  However, Plaintiff's Amended Complaint clearly alleges that Plaintiff was re-hired as a service technician—following a union investigation—in March 2021.  (ECF No. 16 at 4).  Further, the only allegations in the Amended Complaint during March 2022 are that "a customer called back about a router in the basement" on March 6, 2022; that Mr. Stringfellow was sitting in the parking lot on his off day on March 22, 2022; and that "a customer called back about an unsafe temporary drop box that was requested by the customer" on March 31, 2022.  *Id.* at 5.  The Court therefore understands Plaintiff's reinstatement to have occurred in March 2021 rather than March 2022.

nothing to do with sex-based harassment and declines to include any allegations that Mr. Stringfellow retaliated against Plaintiff by sexually harassing Plaintiff or retaliated against Plaintiff for complaining about sexual harassment.

Nor is Plaintiff's retaliation claim exhausted simply by alleging in his EEOC charge that he was "subjected to retaliation for engaging in a protected activity" because Plaintiff's EEOC charge sets forth no indication that Plaintiff actually engaged in a protected activity.  (ECF No. 18-2).  As described above, Plaintiff's EEOC charge does not indicate that his April 4, 2022, internal complaint had to do with complaining about sexual harassment or any other protected basis, which would constitute engaging in a protected activity.  *See Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 743 (D. Md. 2023) ("Protected activity under Title VII includes complaints of discrimination based upon race, color, religion, sex or national origin.  And, [c]omplaints raised through internal company procedures are recognized as protected activity.") (internal quotations omitted).  Rather, it indicates that Plaintiff's internal complaint was about Mr. Stringfellow retaliating against Plaintiff for his union participation.  But there are no grounds for Plaintiff to seek relief under Title VII for alleged retaliation in response to his union participation because "Such activity is instead protected under the [National Labor Relations Act]."  *McGraw v. Nutter*, No. CV DKC 20-0265, 2020 WL 7425308, at *6 n.9 (D. Md. Dec. 18, 2020); *see also id.* (dismissing Title VII retaliation claim after explaining that claims of retaliation regarding a plaintiff's participation in union activities "are the exclusive domain of the National Labor Relations Board," such that "none of it is protected under Title VII").  Finally, complaining about Mr. Stringfellow sitting in the parking lot, reporting Plaintiff's tardiness, bullying Plaintiff, cussing at Plaintiff, and conducting false inspections likewise fails to constitute a protected activity because Plaintiff never indicated—until now for the first time in this lawsuit—that such conduct

was based on Plaintiff's membership in a protected class.  *See, e.g.*, *id.* at \*5 (dismissing Title VII claim for failure to exhaust administrative remedies where plaintiff's EEOC complaint did "not allege any basis (protected status) for the alleged discrimination"); *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 186–87 (D.D.C. 2018) (concluding plaintiff "failed to exhaust her retaliation claim" because she "never alleged 'reprisal' [in her EEOC charge] for *protected activity*, as required by Title VII," and noting that "not every complaint entitles its author to protection from retaliation under Title VII because the plaintiff must demonstrate that he complained [to the employer] of some unlawful discrimination *based on his membership in a protected class*") (internal quotations omitted) (emphasis in original); *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 575–77 (E.D. Va. 2009) (dismissing Title VII retaliation claim for lack of exhaustion where "Plaintiff's EEOC charge did not reflect any protected 'opposition' or 'participation' activity such that the Court could conclude that retaliatory discrimination may have occurred"); *Toran v. Bzdawka*, 72 F. App'x 457, 462 (7th Cir. 2003) (finding plaintiff failed to exhaust Title VII retaliation claim in part because "when explaining the basis for his claim [in his EEOC charge] he did not mention engaging in any protected activity that would support a retaliation charge"); *Guzman v. XTC U.S. Xpress Inc. U.S. Inc.*, No. 123CV01070JMSMJD, 2024 WL 706905, at \*3 (S.D. Ind. Feb. 20, 2024) (determining plaintiff failed to exhaust her retaliation claim in part because "the only factual allegation [in plaintiff's complaint] that could be construed as a protected activity . . . is absent from her EEOC Charge"); *Melendez v. Int'l Serv. Sys., Inc.*, No. 97 CIV. 8051 DAB, 1999 WL 187071, at \*7–8 (S.D.N.Y. Apr. 6, 1999) (granting motion to dismiss Title VII retaliation claim for failure to exhaust administrative remedies in part because "there [was] no allegation [in the EEOC charge] that Plaintiff engaged in any kind of protected activity"); *cf. O'Hara v. Mem'l Sloan–Kettering Cancer*

*Ctr.*, 27 F. App'x. 69, 70–71 (2d Cir. 2001) (holding plaintiff's Age Discrimination in Employment Act retaliation claim "failed to put the [EEOC] on notice that she had engaged in the type of protected activity that is the predicate to a retaliation claim" and therefore plaintiff "has not satisfied a condition precedent to suit with regards to her retaliation claim"); *Kendall v. Donahoe*, 913 F. Supp. 2d 186, 192–93 (W.D. Pa. 2012), *aff'd sub nom. Kendall v. Postmaster Gen. of U.S.*, 543 F. App'x 141 (3d Cir. 2013) (dismissing Americans with Disabilities Act retaliation claim under the same standard as Title VII retaliation claims because plaintiff alleged retaliation for unprotected activities only).

Nor did Plaintiff allege in his EEOC charge that his termination was unlawful retaliation for Plaintiff's communication with the EEOC on April 6, 2022, despite the fact that Plaintiff filed his charge of discrimination on October 28, 2022. *See Johnson*, 682 F. Supp. 2d at 574 n.9 ("The retaliation Plaintiff attempts to allege in his Complaint occurred before Plaintiff filed his EEOC charge, so his EEOC charge should have included such claim."). In fact, Plaintiff concedes that "Plaintiff's EEOC charges states that Plaintiff was suspended on April 5, 2022, and terminated on April 24, 2022, however after further inquiry, Plaintiff learned he was actually terminated on the spot on April 5, 2022." (ECF No. 19-1 at 3 n.1).[4] So not only is Plaintiff precluded from basing Count II on his April 4, 2022, internal complaint for the reasons explained above, but he also cannot base Count II on alleged retaliation for his April 6, 2022, conduct given that his termination occurred before that conduct. *See Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) ("Retaliatory conduct, by its very nature, must come *after* the protected activity.")

---

[4] This concession addresses the inconsistent dates provided by Plaintiff regarding his suspension and termination. *Compare* (ECF No. 16 at 6) (stating Plaintiff was suspended on April 5, 2022, and terminated on April 28, 2022), *with* (ECF No. 18-2 at 2) (stating in Plaintiff's EEOC charge that he was suspended on April 5, 2022, and terminated on April 24, 2022), *and* (ECF No. 19-1 at 3, 5–6) (stating that Plaintiff was terminated on April 5, 2022).

(emphasis in original); (ECF No. 16 at 9) ("Here, the Plaintiff faced retaliation for the complaint he submitted internally, as well as his complaint to the EEOC."). Accordingly, Count II of Plaintiff's Amended Complaint must also be dismissed without prejudice.

> D. <u>Dismissal is Not Warranted at This Time Based on Plaintiff Failing to File His Lawsuit Within 90 Days of Receiving His Right to Sue Notice</u>

Assuming *arguendo* that Plaintiff's EEOC charge sufficiently indicated complaints of sexual harassment and retaliation for engaging in protected activity, Defendant also argues that Plaintiff failed to exhaust his administrative remedies because he filed his lawsuit untimely. (ECF No. 18-1 at 8–10). "It is well settled that a person alleging claims under Title VII must file a lawsuit within 90 days of receipt of the notice of right to sue." *Kramer v. Bd. of Educ. of Balt. Cnty.*, 788 F. Supp. 2d 421, 424 (4th Cir. 2011); *see also* 42 U.S.C. § 2000e-5(f)(1). Courts both within this Circuit and elsewhere have made clear that Title VII's 90-day deadline is strictly enforced. *See, e.g.*, *Norris v. Sheppard Pratt Health Sys., Inc.*, No. CV SAG-22-0687, 2022 WL 2048005, at *1 (D. Md. June 7, 2022) (noting that the deadline in 42 U.S.C. § 2000e-f(1) "is strictly enforced" and collecting cases in which this Court and the Fourth Circuit Court of Appeals have found Title VII lawsuits to be untimely if filed even one day after the 90-day deadline); *Gladden v. Bolden*, 802 F. Supp. 2d 209, 213 (D.D.C. 2011), *aff'd*, No. 11-5279, 2012 WL 1449249 (D.C. Cir. Apr. 12, 2012) ("Courts apply the ninety-day limit strictly and will dismiss a suit for missing the deadline by even one day.") (cleaned up). "In the absence of evidence of the date of receipt, a right-to-sue letter is presumed to have been received by the plaintiff three days after it was issued and mailed, pursuant to Fed. R. Civ. P. 6(d)." *Weathersbee v. Balt. City Fire Dep't,* 970 F. Supp. 2d 418, 427 (D. Md. 2013). The 90-day period otherwise "does not begin to run until the EEOC's decision is received at the employee's residence." *Pierre-Antoine v. ORKIN Extermination Co.*, No. CIV. PJM 12-2710, 2013 WL 1736664, at *2 (D. Md. Apr. 19, 2013). But "The 90-day period

provided for in Title VII is not jurisdictional and is subject to principles of equitable tolling as would be a statute of limitations." *Kramer*, 788 F. Supp. 2d at 425.  Thus, a plaintiff may pursue an untimely Title VII claim under the principle of equitable tolling "only in those rare circumstances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period . . . and gross injustice would result." *Norris*, 2022 WL 2048005 at *1 (internal citation omitted).

Here, the EEOC issued Plaintiff's right to sue notice on July 26, 2023.  (ECF No. 16 at 2; ECF No. 18-2 at 5).  The notice indicates that Plaintiff's "**lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.**"  *Id.* (emphasis in original).  Defendant argues that the 90-day window began running on July 26, 2023, because the EEOC sent Plaintiff an email informing Plaintiff that a document was uploaded to Plaintiff's EEOC portal.  The Court will not consider the email to Ms. Campbell (not Plaintiff) and EEOC log purportedly memorializing an email to Plaintiff for the reasons explained *supra*, so it takes these allegations at face value.  If Defendant is correct that Plaintiff received notice of his right to sue through email on July 26, 2023, then Plaintiff was required to file his lawsuit by October 24, 2023.  Plaintiff did not file his lawsuit until October 27, 2023, though, which would make Plaintiff's lawsuit untimely and thus barred.  Plaintiff counters that he did not receive the notice until July 31, 2023, which would have allowed him to file his lawsuit by October 29, 2023.  (ECF No. 18-1 at 8–10; ECF No. 19-1 at 6).  Moreover, Plaintiff argues that the parties' dispute over when Plaintiff actually received the notice requires the Court to presume receipt three days after mailing.  (ECF No. 19-1 at 6); *see Dunbar v. Food Lion*, 542 F. Supp. 2d 448, 450–51 (D.S.C. 2008) ("When the actual date of plaintiff's receipt of notice is unknown or in dispute, the court presumes receipt three days after mailing.").

This Court analyzed a similar situation in *Garcia v. Baltimore Police Department*, No. CV BPG-22-1423, 2023 WL 3043953 (D. Md. Apr. 21, 2023). In *Garcia*, the plaintiff filed a lawsuit under Title VII alleging hostile work environment, retaliation, and violation of the MFEPA. *Id.* at *1. The plaintiff received an email from the EEOC containing directions to access his right to sue notice on March 9, 2022, but argued that the 90-day period "was not triggered until plaintiff actually viewed the document, and that plaintiff is entitled to application of the mailbox rule because the date of receipt is in dispute." *Id.* at *3. The Court rejected this argument, noting that "this court has held that delivery of an email triggers the running of the filing period." *Id.*; *see also Ward v. Comm'r of Soc. Sec.*, No. WDQ-11-1004, 2012 WL 122412, at *2, *4 (D. Md. Jan. 12, 2012) (finding that Title VII 90-day period was triggered upon plaintiff's receipt of an email regarding his right to proceed with a lawsuit). The Court also noted additional cases in the Fourth Circuit in which courts likewise held that receipt of an email is sufficient to trigger the 90-day period. *See, e.g. Wolfe v. Wps Health Sols., Inc.*, No. 20-CV-175, 2021 WL 1992027 (E.D. Va. Apr. 7, 2021), *report and recommendation adopted*, No. 4:20-CV-175, 2021 WL 1991259 (E.D. Va. May 18, 2021); *Walker-Bey v. Gabrowski*, No. CV 1:22-361-SAL-SVH, 2022 WL 16700446, at *2–3 (D.S.C. July 5, 2022), *report and recommendation adopted*, No. 1:22-CV-00361-SAL, 2022 WL 13848080 (D.S.C. Oct. 24, 2022), *vacated* (Oct. 28, 2022), *superseded*, No. 1:22-CV-00361-SAL, 2022 WL 16510008 (D.S.C. Oct. 28, 2022), *and report and recommendation adopted*, No. 1:22-CV-00361-SAL, 2022 WL 16510008 (D.S.C. Oct. 28, 2022) (finding that EEOC email triggered the 90-day period and that "The Fourth Circuit also has held that a filing one day outside the 90-day statute of limitations is time barred and may be grounds for dismissal,

absent application of equitable tolling").[5]  The plaintiff in *Garcia* likewise contended that the date of receipt was in dispute such that he was presumed to have received the notice three days after it was issued.  *Garcia*, 2023 WL 3043953 at *3.  The Court rejected this argument, concluding that the parties were not disputing the date that the plaintiff received the email notification, but were instead disputing the date that the 90-day period was triggered.  *Id.*  In other words, the parties disputed only when the 90-day period began to run, not whether the plaintiff did, in fact, receive the email as alleged by the defendant.

Here, without relying on the extraneous documents submitted in connection with Defendant's motion to dismiss, there is a dispute regarding whether Plaintiff received notice of his right to sue on July 26, 2023.  The Court therefore presumes that Plaintiff received the notice three days later, on July 29, 2023, which would make Plaintiff's lawsuit timely because it was filed on the 90th day therefrom.  Dismissal is thus unwarranted on this ground at this time.  However, the above case law within the Fourth Circuit and elsewhere makes clear that the 90-day window began to run on July 26, 2023, if there is sufficient evidence to conclude that Plaintiff received an email from the EEOC on July 26, 2023, regarding a new document being added to his EEOC portal, regardless of when Plaintiff actually viewed that email or subsequently received a hardcopy of his notice in the mail.  *See, e.g.*, *Stewart v. Johnson*, 125 F. Supp. 3d 554, 559–60 (M.D.N.C. 2015); *Wolfe*, 2021 WL 1992027 at *3.  This conclusion applies regardless of whether the email specifically indicated that a right to sue notice was uploaded to Plaintiff's EEOC portal or simply that there was *some* update available in his EEOC portal regarding his charge of discrimination.

---

[5] Although the U.S. Magistrate Judge's report and recommendation in *Walker-Bey* was vacated and superseded by later opinions, the court made clear in its ultimate opinion that "The Magistrate Judge correctly found that the ninety-day filing period begins when Plaintiff receives notice that the right to sue is available, not when he collects that notice.  Plaintiff's receipt of the EEOC email triggered the beginning of the ninety-day filing period.  Plaintiff's filing on the ninety-first day was, therefore, untimely.  A filing outside the ninety-day statute of limitations is time-barred and may be grounds for dismissal unless equitable tolling applies."  *Walker-Bey v. Gabrowski*, No. 1:22-CV-00361-SAL, 2022 WL 16510008, at *3 (D.S.C. Oct. 28, 2022).

*See, e.g., Paniconi v. Abington Hosp.-Jefferson Health*, 604 F. Supp. 3d 290, 292–93 (E.D. Pa. 2022) (concluding that 90-day window began when plaintiff and plaintiff's counsel received an email notification from the EEOC informing them to check plaintiff's EEOC portal despite the EEOC email making no specific mention "that a right to sue had been issued"); *McDonald v. St. Louis Univ.*, No. 4:22-CV-01121-SRC, 2023 WL 4262539, at *1–5 (E.D. Mo. June 29, 2023). And it especially applies if the email sent to Plaintiff specifically indicated that the EEOC made a determination regarding his charge and/or that his right to sue notice was available.  *See Deabreu v. United Parcel Serv., Inc.*, No. CV TDC-18-1433, 2018 WL 6329316, at *4 (D. Md. Dec. 3, 2018); *Jacobs*, 2023 WL 4532822 at *5–6 ; *McNaney v. Sampson & Morris Grp., Inc.*, No. 2:21-CV-1809, 2022 WL 1017388, at *3 (W.D. Pa. Apr. 5, 2022); *Mason v. Derryfield Sch.*, No. 22-CV-104-SE, 2022 WL 16859666, at *3 (D.N.H. Nov. 7, 2022); *Asuncion v. Austin*, No. CV 23-00119 LEK-KJM, 2023 WL 5983760, at *6–7 (D. Haw. Sept. 14, 2023).

Thus, Defendant's argument on this issue would be meritorious and necessitate dismissing Plaintiff's lawsuit in its entirety if properly supported by evidence that Plaintiff did, in fact, receive an email on July 26, 2023, informing him to check his EEOC portal.  So although Plaintiff's Title VII claims will be dismissed at the motion to dismiss stage for failing to exhaust administrative remedies as explained above, Defendant would likely also be entitled to judgment as a matter of law on this point at the summary judgment stage to the extent that any such motion was properly supported by evidence that Plaintiff received an email on July 26, 2023, informing him to check his EEOC portal.

E.    The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining
      MFEPA Claims

Finally, Plaintiff's Amended Complaint makes clear that this Court's jurisdiction is premised on federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (ECF No. 16 at 2).  The

Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining MFEPA claim because all of his federal claims under Title VII will be dismissed.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").[6]

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 20) is denied; Plaintiff's Motion for Leave to File Plaintiff's Opposition to Defendant's Motion to Dismiss Six (6) Days Out of Time (ECF No. 21) is granted; and Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 18) is granted.  A separate Order follows.


Dated: March 11, 2024                    _____/s/_____
                                         J. Mark Coulson
                                         United States Magistrate Judge

---

[6] Regardless, Plaintiff's MFEPA claim would also be subject to dismissal because, similar to Plaintiff's Title VII claims, it asserts that "Plaintiff was subjected to harassment or offensive conduct that is based on sex" despite there being no indication that such claims were properly raised administratively.  (ECF No. 16 at 12).